UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

3:22-cv-00480

GARETH J. HALL, et al.,
Plaintiffs

v.

CHARLES S. PHELPS, et al.,
Defendants

**Brief in Support of Motion to Dismiss Amended Complaint
on Behalf of Defendants,
E. David Christine, Michael Mancuso, and Monroe County**

Gerard J. Geiger
PA I.D. No. 44099
NEWMAN | WILLIAMS
712 Monroe Street
Stroudsburg, PA 18360
ggeiger@newmanwilliams.com

Attorney for Defendants,
E. David Christine, Michael Mancuso, and
Monroe County

# Table of Contents

Page

Table of Authorities ................................................................................. ii

I.  Procedural History ......................................................................... 1

II.  Facts .................................................................................................. 2

III.  Issues ............................................................................................... 5

IV.  Argument ......................................................................................... 6

    A.  Motion to Dismiss — Standard of Review ............................ 6

    B.  No First Amendment Retaliation ......................................... 7

    C.  Monroe County cannot be liable under *Monell* for the
        actions of DA Christine and ADA Mancuso because
        they were not County Policymakers ..................................... 10

    D.  No Claim against Monroe County if Christine and
        Mancuso are dismissed as individual defendants ............... 14

    E.  Supervisory Claim ................................................................. 14

    F.  Christine and Mancuso Have Qualified Immunity .............. 16

    G.  Absolute Immunity ............................................................... 21

    H.  Decision Not to Refer to Attorney General's Office ............ 22

V.  Conclusion ....................................................................................... 23

VI.  Certification of Word Count ........................................................... 24

VII.  Certificate of Service ...................................................................... 25

i

# Table of Authorities

Page

*Ashcroft v. al-Kidd,* 563 U.S. 731, 131 S. Ct. 2074,
179 L. Ed. 2d 1149 (2011) ...................................................... *18*

*Associated Gen. Contractors of Cal. v. California State Council of*

*Carpenters,* 459 U.S. 519, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983) ............. *6*

*Barnes v. City of York, No. 1:10-CV-1684,*
2011 U.S. Dist. LEXIS 40010 (M.D. Pa. Mar. 24, 2011) ........................ *12*

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ..................... *6, 7*

*Borough of Moosic,* 841 F.3d 170 (3d Cir. 2016) ....................... *9, 17, 19, 20*

*Brennan v. Norton,*
350 F.3d 399 (3d Cir. 2003) ................................................ *8, 9*

*Carter v. City of Philadelphia,* 181 F.3d 339, 352-53
(3d Cir.1999) ...................................................... 10, 11, *12*, 13

*Est. of Bardzell v. Gomperts,* 2022 U.S. App. LEXIS 7479
(3d Cir. Mar. 22, 2022) ....................................... *12-13, 13*

*Estate of Bardzell v. Gomperts,*
2021 U.S. Dist. LEXIS 77483 (D.N.J. Apr. 22, 2021) ........................... *21*

*Feldman v. Lafayette Green Condominium Ass'n,*
806 A.2d 497 (Pa. Cmwlth. 2002) ...................................... *10*

*Fuchs v. Mercer Cty.,* 260 F. App'x 472 (3d Cir. 2008) ........................... *21*

*Harlow v. Fitzgerald,* 457 U.S. 800, 102 S. Ct. 2727,
73 L. Ed. 2d 396 (1982) .................................................... *16*

*Hunter v. Bryant,* 502 U.S. 224, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) . *17*

*Imbler v. Pachtman,* 424 U.S. 409, 96 S. Ct. 984,

47 L. Ed. 2d 128 (1976) ...................................................................... *12*

*Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.,*
   20 F.3d 1250 (3d Cir. 1994) ...................................................... *6*

*Kelly v. Borough of Carlisle*, 622 F.3d 248 (3d Cir. 2010) ......................... *19*

*Kulwicki v. Dawson*, 969 F.2d 1454 (3d Cir. 1992) ................................... *12*

*Laughman v. Pennsylvania,* 2006 U.S. Dist. LEXIS 15841
   (M.D. Pa. Mar. 17, 2006) ............................................................ *13, 15*

*McKee v. Hart*, 436 F.3d 165 (3d Cir. 2006) ................................................ *8*

McLaughlin v. Watson, 271 F.3d 566 (3d Cir. 2001) .................................. *20*

*Mirabella v. Villard*, 853 F.3d 641 (3d Cir. 2017) ......................................... *9*

*Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902 (3d Cir. 1997) ................. *6*

*Municipal Revenue v. McBlain,* 347 F. App'x 817 (3d Cir. 2009) ............. *10*

*Noonan v. Kane*, 698 F. App'x 49 (3d Cir. 2017) .............................. *8, 9, 10*

*Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808,
   172 L. Ed. 2d 565 (2009) ............................................................. *17*
*Pension Benefit Guar. Corp. v. White Consol. Indus.,*
   998 F.2d 1192 (3d Cir. 1993) ..................................................... *7*

*Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548 (3d Cir. 2002) ....... *7*

*Reichle v. Howards*, 566 U.S. 658, 132 S. Ct. 2088,
   182 L. Ed. 2d 985 (2012) ............................................................. *18*, 19

*Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007) ..................................... *7*

*Saucier v. Katz,* 533 U.S. 194 (2001) ................................................... *16, 17*

*Spiker v. Allegheny Cty. Bd. of Prob. & Parole,*
   920 F. Supp. 2d 580 (W.D. Pa. 2013) ..................................... *12*

*Suppan v. Dadonna*, 203 F.3d 228 (3d Cir. 2000) ..................................... *8*

*Thomas v. Independence Twp.*, 463 F.3d 285 (3d Cir. 2006) ................... *8*

*Tolentino v. Smucker,* 2020 U.S. Dist. LEXIS 94491
   (W.D. Pa. May 28, 2020) ...................................................... *14*

*U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 382 (3d Cir. 2002) ............. *7*

*Wilkinson v. Ellis*, 484 F. Supp. 1072 (E.D. Pa. 1980) ............................... *16*

*Wallace v. Powell,* 2010 U.S. Dist. LEXIS 19919,
   2010 WL 785253 (M.D. Pa. Mar. 1, 2010) ..................................... *11-12*

*Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658 (7th Cir.2016) ... *14*

*Williams v. Fedor*, 69 F. Supp. 2d 649 (M.D. Pa. 1999) ........................... *11*

## I.    Procedural History

On March 30, 2022, the Halls filed a complaint (Doc. No. 1) that included two John Doe defendants.

On July 8, 2022, the Halls filed an Amended Complaint (Doc. No. 11), which dropped the Doe references and added Pennsylvania State Police Sergeant Christopher Bonin as a defendant.

On July 25, 2022, Monroe County District Attorney E. David Christine, First Assistant District Attorney Michael Mancuso, and Monroe County, filed a Rule 12(b)(6) motion concurrently with this supporting brief.[1]

---

[1] The PDF of this brief is bookmarked for ease of reference. All cases are hyperlinked to LEXIS.

## II.  Facts

On December 30, 2020, the Pennsylvania State Police were notified that 19-year-old Christian Hall was threatening to commit suicide by jumping from an overpass onto Route 80. Amended Complaint, at ¶s 4, 15.

After encouraging Christian to allow them to help him for 1 1/2 hours, the police shot and killed him when he walked toward them with a handgun in his hand. Amended Complaint, at ¶ 18.

Christian raised his arms in what the Halls claim was a universal sign of surrender, but he ignored repeated orders to drop the gun, as he approached ever closer to the police. Amended Complaint, at ¶ 21.

Initial shots that missed Christian did not stop his approach nor convince him to drop the weapon. Amended Complaint, at ¶s 88, 89.

As Christian walked towards the police, with the gun still in his hand, and ignoring the Troopers' orders, they fired shots that killed him.

The Halls and the police dispute whether, during his approach, Christian pointed the gun at the police when he was walking towards them, but they do not contest that he was walking towards them with a gun in his hand and refusing orders to drop the weapon. Amended Complaint, at ¶ 26.

After later examination, the police learned that Christian was holding

a pellet gun. They concede it looked like a small caliber handgun.[2]



The Monroe County DA's office only became involved after Christian died. The Halls' claims against them relate to their investigation and the statements they shared with the press about their conclusions, which was not to charge the police with crimes.

Specifically, the Halls blame the County defendants for these actions:

1. DA Christine did not refer the shooting investigation to the Pennsylvania Attorney General's office. Amended Complaint, ¶ 33.

_____

[2] "16. CHRISTIAN was holding a pellet gun that from a distance looked like a small caliber handgun." Amended complaint, at ¶ 16. The County defendants believe that the plaintiffs will agree that this image was of the gun Christian was holding.

2.  ADA Mancuso said at a press conference that Christian pointed the gun in the direction of the police. The Halls claim this is a lie. Amended Complaint, ¶ 71.3

3.  They released the shooting video to the public but "pixelated" a few seconds of the video when the police fired the kill shots. They suggest this was a cover-up and not an effort to redact information too sensitive for public viewing. Amended Complaint, ¶ 72.

4.  They falsely accused Christian's parents of not cooperating in the investigation, claiming this was in retaliation for publicly criticizing the police. Amended Complaint, ¶ 65.

The Halls' legal theories against the County defendants are in three Counts:

1.  Count III: First Amendment retaliation against Christine and Mancuso;

2.  Count IV: Supervisory Liability claim against Christine and Mancuso who the Halls claim were policymakers for Monroe County;

3.  Count V: Monell claim against Monroe County.

---

3  71. The PowerPoint presentation misleads the viewer into believing that in the redacted portion of the video, CHRISTIAN pointed the perceived handgun at Troopers while advancing on Troopers.

### III.    Issues

A.  Do the Halls state a 1st Amendment retaliation claim against the County defendants where the basis for their claim is the County defendants criticized them at a press conference and expressed opinions that they disagreed with?

B.  Can a claim be stated against Monroe County where DA Christine and ADA Mancuso were Commonwealth and not County policymakers in announcing their decision not to file criminal charges?

C.  If the Court dismisses Christine and Mancuso as defendants, can the Halls state a *Monell* claim against Monroe County?

D. Can the Halls state a supervisory claim against the County defendants where they have no authority to supervise the actions of the Pennsylvania State Police?

E.  Do DA Christine and ADA Mancuso have qualified immunity from suit?

F.  Do DA Christine and ADA Mancuso have absolute prosecutorial immunity from suit?

G. Do the Halls have a constitutional right to have the Pennsylvania Attorney General investigate the lawfulness of the shooting?

5

## IV.    Argument

### A.    Motion to Dismiss — Standard of Review

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences drawn from them in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994).

However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983).

As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id., at 555. "Factual allegations must be enough to raise a right to relief above the

speculative level." Id.

The court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); see also *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment").

## B. No First Amendment Retaliation

"In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory

action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citation omitted).

It "is a fact intensive inquiry focusing on the status of the speaker, the status of the retaliator, the relationship between the speaker and retaliator, and the nature of the retaliatory acts." *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (quotation and emphases omitted).

The Halls cannot prove the second element as a matter of law. That is, whether the action would sufficiently deter the exercise of constitutional rights. *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006).

An official's retaliatory action "need not be great in order to be actionable," but it must be more than de minimis. *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000) (quotation omitted). "On the other hand, . . . where the [official's] alleged retaliatory acts were criticism, false accusations, or verbal reprimands," a First Amendment retaliation claim typically does not exist. *Brennan*, 350 F.3d at 419 (quotation omitted); *Noonan v. Kane*, 698 F. App'x 49, 52-53 (3d Cir. 2017).

"[W]here a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that

8

punishment, sanction, or adverse regulatory action will immediately follow, such speech does not adversely affect a citizen's First Amendment rights, even if defamatory." *Noonan v. Kane*, 698 F. App'x 49, 53 (3d Cir. 2017). This is so because, "when a public official's allegedly retaliatory acts are in the form of speech, the official's own First Amendment speech rights are implicated." *Zaloga v. Borough of Moosic*, 841 F.3d 170, 176 (3d Cir. 2016) (quotations omitted).

Because each party has a First Amendment interest in those circumstances, the courts employ "a more specific test to determine whether the official's speech amounts to a retaliatory act." *Mirabella v. Villard*, 853 F.3d 641, 651 (3d Cir. 2017).

As noted, normally "an [official's] actions have [not] adversely affected [the] exercise of First Amendment rights where the [] alleged retaliatory acts were criticism, false accusations, or verbal reprimands." *McKee*, 436 F.3d at 170 (quoting *Brennan*, 350 F.3d at 419 (quotation omitted)). However, a retaliation claim involving a government official's own speech must involve a "threat, coercion, or intimidation" by the official that a punishment will follow from the continued exercise of a plaintiff's First Amendment rights. *Mirabella*, 853 F.3d at 651 (quotation omitted). See also *Koren v. Noonan*, 586 F. App'x 885, 888 (3d Cir. 2014); *Mun.*

*Revenue Servs., Inc. v. McBlain,* 347 F. App'x 817, 825 (3d Cir. 2009).

*Noonan v. Kane*, 698 F. App'x 49, 53-54 (3d Cir. 2017).

The Halls blame the County defendants for their speech in criticizing their protests against the police and in speaking insensitively about Christian. This is the type of conduct that the Third Circuit says does not state a 1st Amendment retaliation claim. Christine and Mancuso did not threaten Christian's parents or suggest they would be punished for having criticized the police.

Moreover, Mancuso's opinion at the press conference about the parents' level of cooperation is not even defamatory. It is a non-actionable opinion. *Feldman v. Lafayette Green Condominium Ass'n*, 806 A.2d 497, 501 (Pa. Cmwlth. 2002) ("It is clear that expressions of pure opinion that rely on disclosed facts are not actionable.") (citations omitted).

### C. Monroe County cannot be liable under *Monell* for the actions of DA Christine and ADA Mancuso because they were not County Policymakers.

The United States Court of Appeals for the Third Circuit, in *Carter v. City of Philadelphia*, 181 F.3d 339, 352-53 (3d Cir.1999), described how Pennsylvania prosecutors can have "a dual or hybrid status." Sometimes, they are state officers. Other times, they are County officers:

When "enforcing their sworn duties to enforce the law ... they act as agents of the State [but] when county prosecutors are called upon to perform administrative tasks unrelated to their strictly prosecutorial functions ... the county prosecutor in effect acts on behalf of the county that is the situs of his or her office." Absent direct intervention by the state, county prosecutors act as county officials when they are called upon to make administrative decisions on a local level.

*Carter*, 181 F.3d at 353 (quoting *Coleman v. Kaye*, 87 F.3d 1491, 1499 (3d Cir.1996)).

The status of the district attorney as a state or county official hinges on whether his actions were prosecutorial or administrative in nature. Examining the particular job functions of a district attorney, a district attorney's actions in prosecuting a criminal case are a function of the state for purposes of municipal liability. See, e.g. *Williams v. Fedor*, 69 F. Supp. 2d 649, 663 (M.D. Pa. 1999) (Vanaskie, J.).

In *Carter*, the court determined, while considering a claim of sovereign immunity under the Eleventh Amendment, that a district attorney acted as a county official in supervising municipal police officials, and training assistant district attorneys to do the same. *Carter*, 181 F.3d at 353. But see *Wallace v. Powell*, No. 3:09-CV-286, 2010 U.S. Dist. LEXIS 19919, 2010 WL 785253, *5 (M.D. Pa. Mar. 1, 2010) (finding that when training subordinates to make direct prosecutorial decisions in the courtroom, as when making such decisions himself, a district attorney is a

11

policymaker for the Commonwealth).

"The recurring theme that emerges from these cases is that county or municipal law enforcement officials may be State officials when they prosecute crimes or otherwise carry out policies established by the State[.]" *Carter*, supra at 352; *Barnes v. City of York*, No. 1:10-CV-1684, 2011 U.S. Dist. LEXIS 40010, at *13-15 (M.D. Pa. Mar. 24, 2011).

The Halls' claim is that Christine and Mancuso improperly decided not to initiate a prosecution against the Troopers who shot Christian. This is not a county function. It goes to the heart of a prosecutor's role.

The Supreme Court of the United States has held "that in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." I*mbler v. Pachtman*, 424 U.S. 409, 431, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976); *Spiker v. Allegheny Cty. Bd. of Prob. & Parole*, 920 F. Supp. 2d 580, 597 (W.D. Pa. 2013). Prosecutors receive similar protection for deciding <u>not to initiate</u> a prosecution.

As the Third Circuit remarked, "The decision [whether] to initiate a prosecution is at the core of a prosecutor's judicial role." *Kulwicki*, 969 F.2d at 1463-64 (citing *Imbler*, 424 U.S. at 430-31); *Est. of Bardzell v. Gomperts*, No. 21-1906, 2022 U.S. App. LEXIS 7479, at *6 (3d Cir. Mar. 22,

2022) ("Absolute immunity for prosecutorial activity is not limited to the initiation of a lawsuit . . . [as] 'the duties of the prosecutor in his role as advocate . . . involve actions preliminary to the initiation of prosecution and actions apart from the courtroom.'" (quoting Absolute immunity can "extend[] to the preparation necessary to present a case, and this [can] include[ ] . . . obtaining, reviewing, and evaluat[ing ] . . . evidence." Id. at 1465; *Est. of Bardzell v. Gomperts*, No. 21-1906, 2022 U.S. App. LEXIS 7479, at *7-8 (3d Cir. Mar. 22, 2022).

Even when a prosecutor acts in bad faith, a decision <u>not</u> to file charges enjoys the same type of immunity. *Est. of Bardzell v. Gomperts*, No. 21-1906, 2022 U.S. App. LEXIS 7479, at *10 (3d Cir. Mar. 22, 2022).

When a District Attorney is making prosecutorial decisions, he is serving in the role of a state actor and the county where his office is located is not liable for his prosecutorial decisions. *Carter*, 181 F.3d at 352. It is only when a District Attorney is performing his administrative functions that he is considered to be acting on behalf of the county. Id.; *Laughman v. Pennsylvania*, No. 1:05-CV-1033, 2006 U.S. Dist. LEXIS 15841, at *21 (M.D. Pa. Mar. 17, 2006).

The focus of the claims against the County defendants is ADA Mancuso's pronouncement at a press conference of his office's decision not

13

to initiate charges against the police. This is a prosecutorial role and an act of a Commonwealth actor, not a policymaker for Monroe County. For that reason, the Halls cannot state a *Monell* claim against Monroe County.

### D.   No Claim against Monroe County if Christine and Mancuso are dismissed as individual defendants

Monroe County should also be dismissed as a defendant if the court dismisses the claims against DA Christine and ADA Mancuso.

The Halls' theory against Monroe County requires an antecedent finding of individual liability against Christine and Mancuso. If they are dismissed as parties, it would negate any possibility of the County's liability for a custom or policy. See *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir.2016) ("[I]f the plaintiff's theory of *Monell* liability rests entirely on individual liability, as Whiting's does here, negating individual liability will automatically preclude a finding of Monell liability."); *Tolentino v. Smucker*, No. 3:19-cv-184-SLH-KAP, 2020 U.S. Dist. LEXIS 94491, at *6 (W.D. Pa. May 28, 2020)

### E.  Supervisory Claim

Although the Halls include in Count IV, a "supervisory liability" claim against DA Christine and ADA Mancuso, they do not specify whom they

14

unlawfully supervised. In fact, Count IV is not a supervisory claim at all. It claims Christine and Mancuso personally retaliated against Christians' parents not that they neglected to supervise someone else:

> "164. CHRISTINE and MANCUSO directly participated in violating Plaintiffs' First Amendment rights by retaliating against them for engaging in protected speech."

Amended Complaint, ¶ 164.

If the Halls intend to suggest that Christine and Mancuso failed to properly supervise the Pennsylvania State Police, it is well established in this Circuit that the PSP operates at the direction of the Governor and the Attorney General.

In *Laughman v. Pennsylvania*, Judge Kane dismissed supervisory claims against the Adams County District Attorney because a County District Attorney had no supervisory authority over the PSP:

> "The Pennsylvania State Police is a state-created, state-operated law enforcement agency within the executive branch of the Commonwealth. 71 Pa. Stat. Ann. § 61 (2005). Under Pennsylvania law, the Pennsylvania State Police operate at the direction of the Governor and Attorney General. Plaintiff cites to no authority, and the Court finds none, in support of its claim that a county prosecutor has supervisory control over Pennsylvania State Police employees."

*Laughman v. Pennsylvania*, No. 1:05-CV-1033, 2006 U.S. Dist. LEXIS 15841, at *14-16 (M.D. Pa. Mar. 17, 2006) (footnotes omitted).

Judge Kane continued:

"Because the Adams County District Attorney's Office had
no  such authority, a § 1983 suit based on its alleged failure to
supervise the Pennsylvania State Police employees is
untenable. See *Wilkinson v. Ellis*, 484 F. Supp. 1072, 1087
(E.D. Pa. 1980) (dismissing the § 1983 failure to supervise
claim against Philadelphia District Attorney after finding he
had no supervisory control over Philadelphia Police)."

Id., at *15 (M.D. Pa. Mar. 17, 2006).

### F.  Christine and Mancuso Have Qualified Immunity

Qualified immunity shields government actors from suit "insofar as
their conduct does not violate clearly established statutory or constitutional
rights of which a reasonable person would have known." *Harlow v.
Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).

In *Saucier v. Katz*, the Supreme Court divided the analysis of
qualified immunity into two parts: First, a court considering qualified
immunity must ask whether the facts alleged, taken in the light most
favorable to the injured party, "show [that] the [government official]'s
conduct violated a constitutional right"; second, the court must ask whether
the right was clearly established "in light of the specific context of the case,
[and] not as a broad general proposition." 533 U.S. 194, 201, 121 S. Ct. 2151,
150 L. Ed. 2d 272 (2001).

16

Notwithstanding the sequence of the *Saucier* questions, federal courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

A governmental official is entitled to qualified immunity when "the law did not put the official on notice that his conduct would be clearly unlawful." *Saucier*, 533 U.S. at 202; *Zaloga v. Borough of Moosic*, 841 F.3d 170, 174 (3d Cir. 2016).

The standard for qualified immunity is tilted in favor of shielding government actors and "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) (internal quotation marks omitted).

To defeat qualified immunity, the right purportedly violated must be so clearly established that every reasonable official would have understood that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate. This "clearly established" standard ... ensur[es] that officials can reasonably ... anticipate when their conduct may give rise to liability for damages.

17

*Reichle v. Howards*, 566 U.S. 658, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012) (emphasis added) (internal quotation marks, citations, and brackets omitted); see also *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) (explaining that, for the contours of a right to be clearly established, "[w]e do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate").

Given that exacting standard, it is not surprising that some degree of specificity in the law is required before a right is said to be "clearly established." The Supreme Court has repeatedly stressed that, for purposes of determining whether a right is so well settled as to defeat qualified immunity, it "must be established not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official[.]" *Reichle*, 132 S. Ct. at 2094 (internal quotation marks and citations omitted).

Thus, in *Reichle v. Howards*, the Supreme Court rejected the plaintiff's argument that a right was clearly established merely because that Court's precedent "settled the rule that, as a general matter, the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for his speech." Id. at 2093-94 (internal quotation marks

18

omitted). The Court explained that, in the fact scenario it faced, "the right in question is not the general right to be free from retaliation for one's speech, but the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause." Id. at 2094 (emphasis added). We thus understand that the right should be framed in terms specific enough to put "every reasonable official" on notice of it, and the more specific the precedent, the more likely it is that a right will meet that threshold. *Zaloga v. Borough of Moosic*, 841 F.3d 170, 175 (3d Cir. 2016).

In *Zaloga,* the Third Circuit noted that it is not enough that 1st Amendment retaliation can form the basis of a §1983 case. Rather, there must be established precedent that what the defendant specifically did violated the First Amendment:

> "Especially in light of *Reichle*, it is not sufficient to conclude, as the District Court did in this case, that the second Saucier prong is satisfied because there is a well-known "right against government retaliation for exercising one[']s right to [free] speech ...." (A34a.) That put the question of whether the "clearly established" standard had been met at much too high a level of abstraction. Instead, we must attend to context; we need to "consider the state of the existing law at the time of the alleged violation and the circumstances confronting [Mercatili] to determine whether a reasonable state actor could have believed his conduct was lawful.*" Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010)."

*Zaloga v. Borough of Moosic*, 841 F.3d 170, 175 (3d Cir. 2016).

In the context of this case, we have not found established Third Circuit precedent that District Attorneys violate the First Amendment rights of shooting victims' families when they announce their conclusions about shooting investigations, or when they publicly criticize the level of cooperation of families who sensibilities may be offended by their conclusions. In fact, the opposite is the case. The Third Circuit has held that retaliatory acts in the form of speech do not violate the First Amendment because the official's own First Amendment speech rights are implicated." *Zaloga v. Borough of Moosic,* 841 F.3d 170, 176 (3d Cir. 2016) (quotations omitted).

The Third Circuit in *McLaughlin v. Watson,* 271 F.3d 566 (3d Cir. 2001)*,* citing a 4th Circuit case, also recognized that when a public official's allegedly retaliatory acts "are in the form of speech," the official's "own First Amendment speech rights are implicated." Id. at 573 (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000)).

Christine's and Mancuso's own First Amendment speech rights are likewise implicated here, and existing precedent supports an objectively reasonable belief that their actions at the press conference did not violate the First Amendment. Since it was not clearly established that the County defendants' acts were constitutionally infirm, they are entitled to qualified

immunity from suit.

### G. Absolute Immunity

Christine and Mancuso are also absolutely immune from suit.

As we note, *infra,* the Halls have no constitutional right to an investigation or the filing of criminal charges. Thus, their claim cannot be for an inadequate investigation. They blame these defendants for failing to initiate a criminal prosecution and for making statements at a press conference they disagreed with.

Absolute immunity applies to a prosecutor's decision whether to initiate a prosecution and his evaluation of the evidence that led to that conclusion. *Estate of Bardzell v. Gomperts*, 2021 U.S. Dist. LEXIS 77483, at *5 (D.N.J. Apr. 22, 2021).

As the Third Circuit said in *Fuchs v. Mercer Cty.*, 260 F. App'x 472, 475 (3d Cir. 2008), "Prosecutors enjoy absolute immunity for the decision to initiate a prosecution, for evaluation of evidence collected by investigators, and even for failure to conduct adequate investigation before filing charges." (internal citations omitted).

## H. Decision Not to Refer to Attorney General's Office

Finally, the Halls accuse DA Christine of "sidelining" the Pennsylvania Attorney General by deciding to have his County office investigate the shooting rather than referring the claim to the Attorney General. Amended Complaint, ¶s 31. They claim that the named officers are part of prosecutions Christine's office handles and thus, it poses a conflict of interest for his office to investigate their conduct. Amended Complaint, ¶ 32.

Aside from the fact that the Pennsylvania AG also uses the State Police to process crimes, the Halls have no constitutional right to require a referral to the AG. They have no constitutional right to an investigation at all and we are not aware that such precedent would support such a claim. But it is also not clear that these allegations are even relevant because they are not included in the Counts against the County defendants. This is another basis for qualified immunity if the court were to even consider this as stating a constitutional claim.

22

## V.  Conclusion

The defendants, E. David Christine, Michael Mancuso, and Monroe County ask the court to grant their motion and dismiss these defendants from the lawsuit.

NEWMAN | WILLIAMS

By: _____
Gerard J. Geiger, Esq.

Date: July 25, 2022

## Certification of Word Count

Pursuant to L.R. 7.8(b)(2), I hereby certify that in accordance with Microsoft Word's "Word Count" feature, the total number of words contained in this brief, excluding the tables of contents and authorities, amounts to 4,520 words. This amount is within the 5,000-word limit imposed by L.R. 7.8(b)(2).

## Certificate of Service

I hereby certify that, on this date, all counsel of record, listed below, were served with a copy of this document via the Court's ECF system:

Devon M. Jacob
Jacob Litigation
P.O. Box 837
Mechanicsburg, PA 17055-0837
djacob@jacoblitigation.com

Emily Jane Rodriguez
PA State Police
Office of Chief Counsel
1800 Elmerton Avenue
Harrisburg, PA 17110
717-783-5568
Fax: 717-772-2883
emrodrigue@pa.gov

Jessica S. Davis
Pennsylvania State Police
1800 Elmerton Avenue
Harrisburg, PA 17110
717-787-0338
Fax: 717-772-2883
jessicdavi@pa.gov

NEWMAN | WILLIAMS

By: _____
Gerard J. Geiger, Esq.

Date: July 25, 2022

25