UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **Gareth J. Hall, et al.,** | : | CIVIL ACTION NO. 22-cv-480 |
| **Plaintiffs,** | : | (JUDGE MANNION) |
| v. | : | |
| **Charles S. Phelps; et al.,** | : | |
| **Defendants.** | : | |

## MEMORANDUM

Presently before the court is Defendants, E. David Christine Jr., Michael Mancuso, and Monroe County's motion to dismiss. (Doc. 23.) Plaintiffs, the parents and estate of the late Christian Hall, who was killed by Pennsylvania State Troopers on December 30, 2020, bring First Amendment retaliation and supervisory liability claims against Christine and Mancuso and a derivative *Monell* liability claim against their employer Monroe County in addition to excessive force and wrongful death claims against the state police. Specifically, Plaintiff challenges allegedly defamatory statements made by Mancuso, then Monroe County's First Assistant District Attorney, at a press conference on March 30, 2021, about Plaintiffs. While insensitive, these statements as pled do not evidence a plausible First Amendment retaliation claim. Accordingly, Defendants' motion to dismiss will be granted.

**I.     Background**

The factual background of this case is taken from Plaintiffs' second amended complaint, (Doc. 22), which the court must accept as true on motion to dismiss.

On December 30, 2020, Christian Hall, age 19, suffered a mental health emergency. Christian, held a pellet gun that from a distance looked like a small caliber handgun and appeared to be contemplating suicide while standing on the State Route 33 southbound overpass to Interstate 80, in Jackson Township, Monroe County, Pennsylvania. Troopers employed by the Pennsylvania State Police responded. After speaking to Christian for approximately 1.5 hours, the state troopers were directed to use deadly force against Christian if he did not drop the pellet gun perceived by the state police as a handgun. With his hands up but pellet gun still in hand, Christian was shot multiple times by state troopers and died.

E. David Christine, Jr., the duly elected District Attorney for Monroe County, appointed Monroe County First Assistant District Attorney, Michael Mancuso, to oversee the homicide investigation regarding Christian's death and make the final prosecutorial decision. Christian's parents, Gareth and Fe Hall, both directly and through their appointed representatives, publicly criticized the Pennsylvania state troopers who shot and killed Christian while

his hands were up in the universal stance of surrender. They also publicly called for Christine to refer the matter to Pennsylvania Office of Attorney General for an unbiased investigation and prosecutorial decision. They further criticized Christine for failing to speak with the media and the public about Christian's death or initiate a conversation with them.  Through social media campaigns, media interviews, public vigils, marches, and protests, in multiple cities, states and countries, Gareth and Fe made these criticisms of Christine and his office publicly known. Neither Christine nor Mancuso, reached out to Gareth and Fe to extend their condolences, explain the criminal investigative process, answer questions, or discuss their investigative findings and related prosecutorial decision.

When Christine and Mancuso announced a public press conference about the investigation, Gareth and Fe formally requested, in writing, for a private meeting with the family to take place beforehand. Christine and Mancuso did not respond to this request and held a press conference on March 30, 2021. At the start of this press conference, Mancuso publicly admonished and embarrassed Gareth and Fe for their public protests, falsely accused them of refusing to cooperate with the criminal investigation into Christian's death, negatively commented about their request to have the matter referred to the Pennsylvania Attorney General, stated they should not

"blame themselves" for Christian's death which he described as a "classic suicide by cop," and attacked Christian's character by disclosing unsubstantiated criminal allegations and information from juvenile records that were protected from public dissemination. Mancuso also accused Plaintiffs' attorneys of being more motived by monetary gain than the pursuit of justice. Christine then announced that his office would not bring charges against any of the troopers involved in Christian's death.

On March 30, 2022, Plaintiffs filed their initial complaint including claims regarding the March 30, 2021, press conference. (Doc. 1.) On July 7, 2022, Plaintiffs amended their complaint. (Doc. 11.) On July 25, 2022, Christine, Mancuso, and Monroe County motioned to dismiss this complaint, (Doc. 12), but before the court could rule on that motion Plaintiffs filed their operative seconded amended complaint on August 25, 2022. Subsequently Christine, Mancuso, and Monroe County filed the present motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

**II.    Legal Standard**

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P.12(b)(6). The moving party bears the burden of showing that no

claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id.* Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit

to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Finally, "[i]nasmuch as Pennsylvania law governs this action[,] we treat Pennsylvania Supreme Court opinions as binding precedent and Pennsylvania Superior Court opinions as persuasive precedent." *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 107 n.2 (3d Cir. 2009).

### III. Discussion

Christine and Mancuso argue that Plaintiffs have failed to plead a plausible first amendment retaliation claim against them because their actions would not deter a person of ordinary firmness from exercising their constitutional rights. Likewise, they claim that Plaintiff's supervisory liability claims fails because they cannot be held liable for failing to supervise the

Case 3:22-cv-00480-MEM   Document 62   Filed 03/11/24   Page 7 of 13

Pennsylvania state police. In any event, they claim entitlement to qualified and absolute immunity from all claims against them. Monroe County also argues that it cannot be held liable under *Monell* for Christine and Mancuso's conduct because their contested actions were as commonwealth not county policy makes. The court will address each of these arguments in turn.

### A. First Amendment Retaliation

"In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citation omitted). It "is a fact intensive inquiry focusing on the status of the speaker, the status of the retaliator, the relationship between the speaker and retaliator, and the nature of the retaliatory acts." *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (quotation and emphases omitted). The "key question" is the second element—whether the action would sufficiently deter the exercise of constitutional rights. *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006). An official's retaliatory action "need not be great in order to be actionable," but it must be more than *de minimus*. *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d

- 7 -

Cir. 2000) (quotation omitted). "On the other hand, ... where the [official's] alleged retaliatory acts were criticism, false accusations, or verbal reprimands," a First Amendment retaliation claim typically does not exist. *Brennan*, 350 F.3d at 419 (quotation omitted).

Whereas here, a public official's allegedly retaliatory acts are in the form of speech, the official's own First Amendment speech rights are implicated. *Zaloga v. Borough of Moosic*, 841 F.3d 170, 176 (3d Cir. 2016) (quotations omitted). Because each party has a First Amendment interest in these circumstances, "we employ a more specific test to determine whether the official's speech amounts to a retaliatory act." *Mirabella v. Villard*, 853 F.3d 641, 651 (3d Cir. 2017)(citing *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 683 (4th Cir. 2000)). As noted, normally "an [official's] actions have [not] adversely affected [the] exercise of [ ] First Amendment rights where the [ ] alleged retaliatory acts were criticism, false accusations, or verbal reprimands." *McKee*, 436 F.3d at 170 (quoting *Brennan*, 350 F.3d at 419 (quotation omitted)). However, a retaliation claim involving a government official's own speech must involve a "threat, coercion, or intimidation" by the official that a punishment will follow from the continued exercise of a plaintiff's First Amendment rights. *Mirabella*, 853 F.3d at 651 (quotation omitted). *See also Noonan v. Kane*, 698 F. App'x 49, 54 (3d Cir. 2017), *Koren v. Noonan*,

586 Fed. App'x. 885, 888 (3d Cir. 2014); *Mun. Revenue Servs., Inc. v. McBlain*, 347 Fed. App'x. 817, 825 (3d Cir. 2009)(citing *Suarez,* 202 F.3d at 687 ("Thus, where a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that punishment, sanction or adverse regulatory action will imminently follow, such speech does not adversely affect a citizen's First Amendment rights, even if defamatory.*"*))

      Here it undisputed that Gareth and Fe engaged in constitutionally protected activities. They claim that Christine and Mancuso, retaliated against them for these activities by *inter alia* defaming them and their late son at the March 30, 2021, press conference. However, this alleged retaliatory conduct was itself speech. Moreover, Christine and Mancuso were both public officials and acting in their capacities as such at the March 30, 2021, press conference. Thus, even if they defamed Plaintiffs at that press conference, their conduct would not give rise to a First Amendment Retaliation claim absent a threat, coercion, or intimidation of imminent punishment. As pled Mancuso's statements can at best be described as tone deaf not only to a grieving family but also a grieving community. Still for as insensitive as these alleged statements were they did not contain any threat of criminal prosecution or other type of adverse disciplinary sanction against

Plaintiffs. Accordingly, under the binding precedent of the Third Circuit this court is required to find that the retaliatory conduct by public officials alleged here would not deter a person of ordinary firmness from exercising their constitutional rights, and Plaintiffs contrary claim fails as a matter of law.

### B. Supervisory Liability

To state a claim for supervisory liability against Christine or Mancuso Plaintiffs "must show that he participated in violating their rights, or that he directed others to violate them, or that he, as the person in charge of the [violation], had knowledge of and acquiesced in his subordinates' violations." *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995). Christine and Mancuso argue for dismissal on the basis that they cannot be held liable for supervising the state police. However, Plaintiffs in their brief in opposition clarify that they never asserted this theory of liability. Instead, they argue that Christine, as the District Attorney who delegated authority to Mancuso, is a supervisor who either directly participated in or had knowledge of and acquiesced in Mancuso's constitutional violations *i.e.*, First Amendment retaliation. Likewise, they argue that to the extent Mancuso wishes to identify subordinates who may have participated in whole or in part in his retaliatory conduct as their supervisor and as a person who directly participated in violating Plaintiffs' constitutional rights, he may be held liable. Regardless as

previously discussed the alleged retaliatory conduct here did not amount to a constitutional violation. Accordingly, Plaintiff's claim for supervisory liability based on that inadequately pled violation also fails as a matter of law.

### C. Qualified and Absolute Immunity

Christine and Mancuso argue that they are entitled to qualified and absolute immunity on all Plaintiff's claims. But since Plaintiff's claims against them both fail as a matter of law the court need not discuss these issues.[1]

### D. *Monell* Liability

"Local governing bodies . . . can be sued directly under §1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Monroe County claims that Plaintiffs' *Monell* claim against it fails because Christine and Mancuso in deciding not to file criminal charges against the troopers who shot Christian were acting as commonwealth not county policymakers.

---

[1] Defendants also argue Plaintiffs have no constitutional right to an investigation or filing of criminal charges regarding their son's death, nor do they have a right for said investigation to be referred to the Attorney General. However, Plaintiffs in their brief in opposition clarify that they never asserted such theories of liability. (Doc. 28 at 9 nn. 7-9.) Accordingly, the court will not discuss or address these issues either.

*See Williams v. Fedor*, 69 F. Supp. 2d 649, 663 (M.D. Pa. 1999), *aff'd*, 211 F.3d 1263 (3d Cir. 2000)(District attorney's decision to prosecute plaintiff was made in his capacity as a representative of the Commonwealth of Pennsylvania, and not of the county.) However, Plaintiffs do not challenge Christine and Mancuso's decision not to file criminal charges, they challenge their alleged retaliatory comments made at the March 30, 2021, press conference. Conducting a press conference is an administrative function. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 278 (1993) (prosecutor not acting in role as advocate for the State when conducting press conference). Thus, Plaintiffs are ultimately challenging Christine and Mancuso's conduct as county policymakers for which Monroe County could be liable. But again, as previously stated Christine and Mancuso's conduct did not impose any liability for which Monroe County could be derivatively liable. Accordingly, Plaintiffs' claim against Monroe County fails as a matter of law.

### IV.   Futility of Amendment

The court's final inquiry is whether dismissal should be with or without prejudice. Having considered the matter, the court finds that dismissal should be with prejudice because any further amendment would be futile. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008)(if a complaint is subject

to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile.) *Alston v. Parker,* 363 F.3d 229, 235 (3d Cir. 2004). The Third Circuit has instructed district courts to provide plaintiffs with leave to amend even if the plaintiff, as is the case here, do not seek it. *Id.* However, allowing Plaintiffs to amend here would be futile. As pled Christine and Mancuso's conduct was insensitive but it cannot be viewed as a violation of Plaintiffs' constitutional rights. Furthermore, Plaintiffs have already had three opportunities to plead their claims. Allowing a third amended complaint would only serve to delay the adjudication of the central claims in this action. Accordingly, the claims at issue here will be dismissed with prejudice.

### V.     Conclusion

Based on the aforesaid Defendants Christine, Mancuso, and Monroe County's motion to dismiss will be granted and Counts III, VI, and VII of Plaintiffs' second amended complaint will be dismissed with prejudice. An appropriate order follows.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 11, 2024**
22-480-01