UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Gareth J. Hall, et al., | : | CIVIL ACTION NO. 22-cv-480 |
| Plaintiffs, | : | (JUDGE MANNION) |
| v. | : | |
| Charles S. Phelps; et al., | : | |
| Defendants. | : | |

### MEMORANDUM

Presently before the court is Defendant Robert Evanchick's motion to dismiss Plaintiffs' supervisory liability claim against him. (Doc. 27.) Plaintiffs are the parents and estate of the late Christian Hall, who was shot and killed by Pennsylvania State Troopers on December 30, 2020. Defendant Evanchick was the Pennsylvania State Police ("PSP") Commissioner at all relevant times. Plaintiffs allege that Evanchick is liable for the constitutional violations suffered by Christian Hall as the result of subordinate Pennsylvania State Troopers' conduct. Evanchick argues that Plaintiff have not adequately pled this claim and in any event, he is immune from liability. However, the court finds that Plaintiffs have plausibly plead Evanchick, the ultimate supervisor of the troopers who shot and killed Christian Hall, is subject to supervisory liability regarding his death, and is not entitled to

qualified or sovereign immunity. Accordingly, Evanchick's motion to dismiss Plaintiffs' supervisory liability claim will be denied.

I.  **Background**

The factual background of this case is taken from Plaintiffs' second amended complaint, (Doc. 22), which the court must accept as true on motion to dismiss.

On December 30, 2020, Christian Hall, age 19, suffered a mental health emergency. Christian, held a pellet gun that from a distance looked like a small caliber handgun and appeared to be contemplating suicide while standing on the State Route 33 southbound overpass to Interstate 80, in Jackson Township, Monroe County, Pennsylvania. Troopers employed by the PSP responded. After speaking to Christian for approximately 1.5 hours, the troopers were directed to use deadly force against Christian if he did not drop the pellet gun perceived by the PSP as a handgun. With his hands up but pellet gun still in hand, Christian was shot multiple times by state troopers and died.

On the day Christian was killed the PSP issued an official statement that provided, in relevant part, Christian "retrieved the firearm and began walking towards the Troopers. At which time, Hall pointed the firearm in the

Troopers' direction. As a result, Troopers fired striking Hall." Plaintiffs allege that Evanchick participated with subordinate agents and/or employees in drafting this description of the incident, despite having access to video and audio recordings that contradicted it. Once a bystander video contradicting this official statement came to light, Evanchick did not retract or correct the statement. Plaintiffs allege that Evanchick issued and refused to retract the now contradicted official statement to thwart public oversight and pressure, undermine the homicide investigation into Christian's death, and deter Plaintiffs from filing a civil lawsuit.

In April of 2021, Christian's father, Gareth J. Hall, personally, and as the Administrator of Christian's estate, filed a praecipe for writ of summons in the Monroe County Court of Common Pleas, and issued a subpoena to Evanchick, as custodian of records for the PSP, to produce all audio, video, and documents, related to Christian's death. Evanchick, in accordance with what Plaintiffs allege was his policy and practice, initially refused to produce any documents by asserting that all documents were protected from discovery pursuant to Pennsylvania's Criminal History Record Information Act ("CHRIA"), even though he knew they were not protected. Evanchick also did not personally identify the troopers who shot Christian until Plaintiffs initiated litigation in state court. Even after identifying which troopers who

shot Christian, Evanchick refused to confirm which one of them fired the fatal shots. Plaintiffs claim this refusal was to undermine their ability to file a private criminal complaint and to fully state their civil claims.

In December of 2021, the Pennsylvania State Law Enforcement Citizen Advisory Commission recommended *inter alia* that all investigations involving a use of force resulting in death or serious bodily injury be referred to an external agency meeting minimum accreditation standards recognized by the United States Department of Justice. Evanchick rejected this recommendation. Plaintiffs allege that this action is part of Evanchick's toleration and encouragement of a culture at the PSP where killing troubled persons when not necessary is tolerated.

In support of this allegation, Plaintiffs cite the case of a trooper, who was named trooper of the year by his unit after he shot and killed a suicidal man who allegedly pointed an Uzi submachine gun at him. That trooper would go on to shoot and kill three additional people, including two whose families specifically called the PSP because they were suicidal. In all these instances the PSP insisted and was permitted to investigate itself. It was not until 2021 that the *New York Times* reported the PSP omitted from their report on the first incident that the decedent taped the alleged Uzi to his chest and neck, so the barrel pointed up at his chin, not at the trooper or anyone

else. Furthermore, Plaintiffs allege that prior to Christian's death, Evanchick and the Pennsylvania State Police negotiated at arm's length, a collective bargaining agreement that permits the PSP to significantly delay investigating and deciding whether a use of deadly force violated PSP policies and training. Plaintiffs plead that all of these actions or inactions were the proximate cause of Christian's death.

On March 30, 2022, Plaintiffs filed their initial complaint including a supervisory liability claim against Evanchick. (Doc. 1.) On July 7, 2022, Plaintiffs amended their complaint. (Doc. 11.) On July 28, 2022, Evanchick motioned to dismiss the supervisory liability claim against him, (Doc. 16), but before the court could rule on that motion Plaintiffs filed their operative seconded amended complaint on August 25, 2022. (Doc. 22.) Subsequently Evanchick filed the present motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.     Legal Standard

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P.12(b)(6). The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir.

2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id*. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached]

documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Finally, "[i]nasmuch as Pennsylvania law governs this action[,] we treat Pennsylvania Supreme Court opinions as binding precedent and Pennsylvania Superior Court opinions as persuasive precedent." *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 107 n.2 (3d Cir. 2009).

### III.   Discussion

Evanchick argues that Plaintiffs fail to state a claim for supervisory liability under the First, Fourth, and Fourteenth Amendments because they do not plead his personal involvement. Specifically, he argues that issuing a press release containing statements Plaintiffs disagree with does not violate the First Amendment, and his overall conduct does not shock the conscience so at to establish a Fourteenth Amendment violation. Moreover, Evanchick

claims he is entitled to qualified and sovereign immunity from all of Plaintiffs' claims. However, Plaintiffs in their brief in opposition clarify that their supervisory liability claim is based solely on alleged Fourth Amendment violations. (Doc. 34 at 2-3 n.1 & n.4.) Likewise, they clarify that they are suing Evanchick in his personal not official capacity making sovereign immunity inapplicable. (Doc. 34 at 3 n.2; Doc. 22 at ¶10.) Nonetheless Evanchick's counsel continues to argue these issues in his reply brief. Conversely Plaintiffs' counsel spill much ink arguing how Evanchick's conduct *after* Christian's death makes him liable for PSP troopers shooting and killing Christian but does not clearly explain how his actions or lack thereof *before* Christian's death impose supervisory liability.

Putting these arguments aside the court address the issues most relevant to its decision here namely whether Plaintiffs have adequality pled Evanchick knew about and failed to address constitutional violations by his subordinates of the kind Christian suffered, whether the constitutional right Plaintiffs claim Evanchick subordinates violated was clearly established at the time of the violation, and whether Evanchick can claim sovereign immunity when as is the case here he is sued in his personal not official capacity.

### A. Supervisory Liability

To state a claim for supervisory liability against Evanchick, Plaintiffs "must show that he participated in violating Christian's rights, or that he directed others to violate them, or that he, as the person in charge of the [violation], had knowledge of and acquiesced in his subordinates' violations." *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995). A supervisory defendant in a §1983 action may not be liable based merely on the theory of *respondeat superior. Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988). Instead, the plaintiff must allege that the supervisory defendant was personally involved in the incident at hand. *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005). "Unfortunately, the term 'personal involvement' is not universally defined in applicable case law." *Broadwater v. Fow*, 945 F. Supp. 2d 574, 587 (M.D. Pa. 2013)(citing *Argueta v. U.S. Immigration and Customs Enforcement,* 643 F.3d 60, 72 (3d Cir. 2011) ("Plaintiffs acknowledge that the 'terminology' used to describe 'supervisory liability' is 'often mixed.'")). Still the caselaw is clear that the defendant supervisor must somehow exhibit a "deliberate indifference" to the deprivation of the plaintiff's constitutional rights. *Sample v. Diecks,* 885 F.2d 1099, 1118 (3d Cir. 1989).

Policy-making supervisors like Evanchick may be liable if they "established and maintained a policy, practice or custom which directly

caused [the] constitutional harm." *Santiago v. Warminster Twp.,* 629 F.3d 121, 129 n. 5 (3d Cir.2010)(quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.,* 372 F.3d 572, 586 (3d Cir. 2004)). A supervisor's failure to employ a specific supervisory practice or procedure to correct a known unreasonable risk of constitutional harm also satisfies the personal involvement requirement. *Sample,* 885 F.2d at 1118. Likewise mere knowledge and acquiescence in a subordinate's constitutional violations may qualify as personal involvement. *Rode* 845 F.2d at 1207 (3d Cir. 1988). Allegations that a supervisor "tolerated past or ongoing misbehavior" may further suffice. *Baker,* 50 F.3d at 1191 n. 3 (3d Cir. 1995) (citing *Stoneking v. Bradford Area Sch. Dist.,* 882 F.2d 720, 724–25 (3d Cir.1989)).

To establish knowledge and acquiescence of a subordinate's misconduct, a plaintiff must allege the defendant's (1) contemporaneous knowledge of the offending incident or knowledge of similar incidents in the past, and (2) actions or inactions which communicated approval of the subordinate's behavior. *See C.H. ex rel. Z.H. v. Oliva,* 226 F.3d 198, 202 (3d Cir. 2000). A plaintiff may not allege that a supervisory defendant had constructive knowledge of a subordinate's unconstitutional conduct simply because of his role as a supervisor. *See McQueen v. Phila. Hous. Auth.,* Civ. A. No. 02–8941, 2003 WL 22533726, at *3 (E.D.Pa. Sept. 26, 2003).

Furthermore, failure to train only amounts to deliberate indifference "where the need for more or different training is obvious" and the lack of training can be expected to result in constitutional violations. *Carter v. City of Phila.,* 181 F.3d 339, 357 (3d Cir. 1999)(citing *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

Evanchick argues that Plaintiffs do not plead his personal involvement in the alleged violation of Christian's constitutional rights *i.e.*, be free from excessive and deadly force.[1] Whereas Plaintiffs argue that the facts in their complaint show Evanchick tolerated and actively encouraged the use of excessive force by subordinates by intentional using his authority as a supervisor to cover up and excuse wrongdoing. In support of this argument Plaintiff's point to Evanchick's pled conduct *after* Christian died, namely his personal involvement in publishing a since contradicted official statement about Christian's death, failing to comply with Plaintiff's subpoena, and refusing to identify the trooper that fired the fatal shots. However, none of these subsequent actions or inactions are relevant to the court's analysis

---

[1] . *See, e.g., Lamont v. New Jersey,* 637 F.3d 177, 185 (3d Cir. 2011) (finding this right "clearly well-established" because "[i]t has long been the law that an officer may not use deadly force against a suspect unless the officer reasonably believes that the suspect poses a threat of serious bodily injury to the officer or others").

which turns on what Evanchick did or failed to do *before* Christian was shot and killed.

For guidance on this issue, the court looks to two cases, where similarly situated Plaintiffs brought supervisory liability claims against the PSP Commission. In *Zion v. Nassan,* 727 F.Supp.2d 388 (W.D.Pa. 2010), a state trooper and his partner shot and killed an unarmed person in his car. 727 F.Supp.2d at 392–93. The estate representative and children of the decedent brought a supervisory liability claim pursuant to §1983 against the PSP Commissioner, the trooper's area commander, the trooper's commanding officer, and the trooper's direct supervisor. *Id.* at 391–93. The complaint included numerous allegations of the defendant trooper's violent history including an incident where a civil jury previously found him liable for the shooting death of a twelve-year old boy. *Id.* at 392–93. The complaint specifically alleged that the trooper's supervisors were aware of these incidents. *Id.* at 392–93. The supervisors did not order additional training of the trooper, and one even ordered a subordinate to alter the trooper's employment records. *Id*. As a result the court found plaintiffs adequately alleged sufficient facts to impose liability on the supervisors including the PSP Commissioner and denied defendants' motion to dismiss. *Id.* at 407.

In *Barber v. Pennsylvania State Police,* Civ. A. No. 06–1713, 2007 WL 2071896 (W.D.Pa. Jul. 19, 2007), the court also denied the PSP Commissioner's motion to dismiss plaintiff's supervisory liability claim. 2007 WL 2071896, at *3. The plaintiff specifically alleged that the PSP Commissioner occupied a position of responsibility, in which he "knew or should have know [sic] of the aforementioned problems and misconduct of the Pennsylvania State Police...." *Id.* at *4. The plaintiff also alleged that other PSP troopers, other than the officer in question, had used excessive force on individuals. *Id.* The court reasoned that other legal claims involving the use of excessive force should have placed the Commissioner on notice of the problem and alerted him to the need for further training and supervision. *Id.* The court in *Broadwater* synthesized *Zion* and *Barber* to conclude that the "key factors" in both cases were "the supervisory defendants' knowledge of ongoing constitutional issues or problems, authority or means to address the matters, and, ultimately, failure to take appropriate action." 945 F. Supp. 2d at 589–90 (M.D. Pa. 2013).

Unlike in *Zion*, Plaintiffs here do not allege that either of the troopers who shot Christian have violent histories including past civil verdicts against them, nor do they allege that Evanchick had any knowledge of such history. However, like in *Barber* they do allege that Evanchick occupied a position of

responsibility, in which he should have known other PSP troopers, as noted above, had used excessive deadly force on individuals experiencing mental health emergencies like Christian did on December 30, 2020. While unlike in *Barber* Plaintiffs do not specifically allege legal claims were filed against that trooper or other PSP employees for similar conduct, they do allege that the PSP itself investigated the deadly force incidents involving them. Such investigations should have put Evanchick on notice of PSP troopers potentially unconstitutional use of excessive and deadly force against suicidal persons and alerted him to the need for further training and supervision. As pled Evanchick had knowledge or was at least deliberately indifferent to ongoing constitutional issues or problems within the PSP, and authority or means to address the matters, but, ultimately, failed to take appropriate action. Accordingly, Plaintiffs at this stage of the litigation plausibly plead a supervisory liability claim against Evanchick based on excessive force in violation of the Fourth Amendment.

### B. Qualified Immunity

Qualified immunity "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11(2015) (quoting *Pearson* v. *Callahan*, 555 U.S. 223, 231, 129 S.Ct.

808 (2009)). The test is whether, on an objective basis no reasonable, competent official would have reached the same conclusion as was reached by the defendant. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). If officials of reasonable competence could disagree on this issue, immunity should be recognized. *Id*. Even if the official's conduct violates a person's constitutional rights, the official would be immune from liability if his conduct were due to a mistake in judgment. *Id*.; *Butz v. Economu*, 438 U.S. 478 (1978). Thus, the only inquiry which must be undertaken is a question of law, that is: "the objective (albeit fact-specific) question" whether a reasonable official in the defendant's position in this case could have believed his actions "to be lawful, in light of clearly established law and the information. . . [they] possessed." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

"Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 583 U.S. 48, 138 S. Ct. 577, 589, 199 L.Ed.2d 453 (2018) (internal quotation marks and citation omitted). For qualified-immunity purposes, "clearly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a 'robust consensus of cases of persuasive authority in the Courts of Appeals.'" *Bland v. City of Newark*, 900 F.3d 77, 84 (3d Cir.

2018) (citation omitted); see *Wesby*, 138 S. Ct. at 589–90 ("To be clearly established, a legal principle must ... [be] dictated by controlling authority or a robust consensus of cases of persuasive authority[.]" (citations and internal quotation marks omitted))

Evanchick claims his counsel has found no precedent that would suggest that: 1) aggressively responding to a subpoena; 2) issuing a press release; or 3) rejecting a recommendation of an advisory board violated any clearly established constitutional rights and he is therefore entitled to qualified immunity from any claim based on those actions or inactions. Likewise, Evanchick argues that anecdotal evidence about the use of excessive force by one other PSP member out of a complement of 4,500, does not evidence a concerted effort to permit subordinates to use excessive force, or show that he engaged in any violation of clearly established law.

These arguments miss the mark. In the context of supervisory liability claims, "it is Plaintiff's right that must be clearly (or shown not to be clearly established by the Supervisor Defendants), not the standard to impose supervisory liability." *Rosenberg v. Vangelo*, 93 F. App'x 373, 378–79 (3d Cir. 2004)(citing *Beers–Capitol v. Whetzel,* 256 F.3d 120, 142 n. 15.) It is clearly established that citizens have a right to be free from excessive and deadly force during lawful arrests absent the risk of serious bodily injury to

police or others. *See Dull v. W. Manchester Twp. Police Dep't*, 604 F. Supp. 2d 739, 749 (M.D. Pa. 2009)(citing *Kopec v. Tate,* 361 F.3d 772, 776–78 (3d Cir. 2004)("Every citizen has a Fourth Amendment right to be free from excessive force during lawful arrests."); *See also Lamont,* 637 F.3d at 185 ("[i]t has long been the law that an officer may not use deadly force against a suspect unless the officer reasonably believes that the suspect poses a threat of serious bodily injury to the officer or others").

Plaintiffs allege that this right was violated when Evanchick's subordinates shot and killed Christian, making Evanchick liable as their ultimate supervisor. Accordingly, Evanchick is not entitled to qualified immunity from Plaintiff's supervisory liability claim based on a Fourth Amendment excessive force violation at this stage of the litigation.

**C. Sovereign Immunity**

The Eleventh Amendment has been interpreted to make states generally immune from suit by private parties in federal court. *See Board of Tr. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 962, 148 L.Ed.2d 866 (2001); *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 669–70, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997); *Seminole Tribe of Florida v. Florida*, 517 U.S.

44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). This immunity extends to state officials acting in their official capacities because it "is not a suit against the official but rather is a suit against the official's office" and, therefore, is "no different from a suit against the state itself. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)(internal citations omitted). However, the Eleventh Amendment does not bar a suit against state officials acting in their personal capacity. *Hafer v. Melo*, 502 U.S. 21, 31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

Despite Plaintiffs clearly alleging claims in their second amended complaint against Evanchick in his personal not official capacity (Doc. 22 at ¶10), Evanchick's counsel argues for entitlement to sovereign immunity on motion to dismiss. Plaintiffs, despite clarifying in their brief in opposition that they are suing Evanchick in his personal capacity (Doc. 34 at 3 n.2), also do not argue this fact deprives him of sovereign immunity but instead argue that Evanchick is not entitled to sovereign immunity because his contested actions were outside the scope of his employment. In their reply Evanchick's counsel again overlooks the dispositive flaw in their sovereign immunity argument and focuses their attention on emphasizing Evanchick's actions were within the scope of his employment as PSP Commissioner. Regardless of whether Evanchick's action were in the scope of his employment,

sovereign immunity does not apply here because Plaintiffs have sued Evanchick in his personal capacity. Accordingly, Evanchick is not entitled to sovereign immunity from Plaintiffs' supervisory liability claim against him.

IV. **Conclusion**

Based on the aforesaid Defendant Evanchick's Motion to Dismiss (Doc. 27) will be denied at this stage of the litigation. An appropriate order follows.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 11, 2024**
22-480-02